## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| ROBERT J. WILLETTE, on behalf of himself and all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) CLINICAL DATA, INC., ANDREW J. FROMKIN, RANDAL J. KIRK, ARTHUR B. MALMAN, LARRY D. HORNER, BURTON E. SOBEL, RICHARD J. WALLACE, SCOTT TARRIFF, FOREST LABORATORIES, INC., and MAGNOLIA ACQUISITION CORP., ) ) ) ) ) ) ) ) ) Defendants. ) ) | Case No. 1:11-cv-10524 |

---

### CLASS ACTION COMPLAINT

Plaintiff alleges the following facts upon information and belief, except as to himself, which facts are alleged upon personal knowledge. Plaintiff believes that further support for these allegations will be forthcoming with discovery.

### NATURE OF ACTION

1.      This is a class action brought by Plaintiff on behalf of himself and the other public shareholders of Clinical Data, Inc. ("Clinical Data" or the "Company") against the Company's board of directors (the "Board") arising out of their attempt to sell the Company to Forest Laboratories, Inc. ("Forest") by means of an unfair process and for an unfair price (the "Proposed Transaction").

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(1) in that plaintiff and defendants are citizens of different states and the matter

in controversy exceeds $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

3.      This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

4.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because Clinical Data's headquarters are located at One Gateway Center, Suite 702, Newton, Massachusetts.

**PARTIES**

5.      Plaintiff is, and has been at all relevant times hereto, a Company shareholder. Plaintiff is a citizen of Maine.

6.      Clinical Data is a Delaware corporation with its principal corporate offices located at One Gateway Center, Suite 702, Newton, Massachusetts 02458.

7.      Defendant Andrew J. Fromkin ("Fromkin") has been the President, Chief Executive Officer, and a director of the Company since 2006.  On information and belief, Fromkin is a citizen of New Jersey.

8.      Defendant Randal J. Kirk ("Kirk") has been Chairman of the Board of the Company since 2004 and has served as a director since 2002.  On information and belief, Kirk is a citizen of Virginia.

9.      Defendant Arthur B. Malman ("Malman") has been a director of the Company since 1975.  On information and belief, Malman is a citizen of New York.

10.     Defendant Larry D. Horner ("Horner") has been a director of the Company since 2002.  On information and belief, Horner is a citizen of New York.

2

11.     Defendant Burton E. Sobel ("Sobel") has been a director of the Company since 2005.  On information and belief, Sobel is a citizen of Vermont.

12.     Defendant Richard J. Wallace ("Wallace") has been a director of the Company since 2008.  On information and belief, Wallace is a citizen of North Carolina.

13.     Defendant Scott Tarriff ("Tarriff") has been a director of the Company since 2009.  On information and belief, Tarriff is a citizen of New Jersey.

14.     Defendants Fromkin, Kirk, Malman, Horner, Sobel, Wallace and Tarriff are collectively referred to as the Individual Defendants.

15.     Defendant Forest is a Delaware corporation with its headquarters located in New York, New York.  Forest develops, manufactures, and sells branded and generic forms of ethical drug products. Its principal products include Lexapro for the treatment of depression in adults and adolescents, and generalized anxiety disorder in adults; Namenda for the treatment of Alzheimer's disease; Bystolic for the treatment of hypertension; and Savella for the management of fibromyalgia.

16.     Defendant Magnolia Acquisition Corp. ("Merger Sub") is a Delaware corporation that was created for the purposes of effectuating the Proposed Transaction, and is a wholly-owned subsidiary of FL Holding CV, an entity organized under the laws of the Netherlands that is a wholly-owned subsidiary of Forest.

**CLASS ACTION ALLEGATIONS**

17.     Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all public shareholders of Clinical Data (the "Class").  Excluded from the Class are the Defendants named herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

3

18.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of February 24, 2010, there were approximately 30.95 million shares of Clinical Data common stock outstanding.

b.     There are questions of law and fact which are common to the Class including, inter alia, the following:

i.     Whether the Individual Defendants have breached their fiduciary and other common law duties owed by them to Plaintiff and the other members of the Class;

ii.     Whether Defendants are unlawfully preventing the Company's public shareholders from maximizing the value of their Clinical Data holdings; and

iii.     Whether the Class is entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

c.     Plaintiff is committed to prosecuting this action, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.  Plaintiff's claims are typical of the claims of other members of the Class and Plaintiff has the same interests as the other members of the Class.

d.     Defendants have acted in a manner which affects Plaintiff and all other members of the Class alike, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### *Background*

19.     Clinical Data is focused on the development and commercialization of first-in-class and best-in-class therapeutics. The Company is FDA approved to market Viibryd for the treatment of major depressive disorder ("MDD") and is advancing its late-stage drug candidates for cardiovascular diseases, to be followed by promising drug candidates in oncology and inflammatory diseases.

20.     On January 24, 2011, Clinical Data announced that the FDA approved its vilazodone HCl tablets, to be marketed under the brand name Viibryd, for the treatment of adults with MDD, a condition that affects approximately 18 million people in the United States.  More than 212 million prescriptions were written for antidepressants in 2009. "While there are currently available treatments for MDD, no one therapy works for every patient and side effect profiles vary, which may impact both compliance and treatment success," said Carol R. Reed M.D., Executive Vice President and Chief Medical Officer of Clinical Data. "Viibryd will be a new choice for healthcare providers and their patients who are suffering from depression."

21.     "Viibryd is the only antidepressant that is a selective serotonin reuptake inhibitor and $5HT_{1A}$ receptor partial agonist," said Drew Fromkin, President and CEO of Clinical Data. "It is also the first drug that the Company has developed, and to have received marketing approval from the FDA on its first review is a significant milestone for Clinical Data." As stated in the press release, "Clinical Data plans to make Viibryd available in U.S. pharmacies in the second quarter of this year."

22.     Analysts viewed the approval of Viibryd very favorably.  For example, on January 24, 2011, investment bank Rodman & Renshaw initiated coverage on Clinical Data and

5

set a $46.00 price target on the stock.  In a research note on February 15, 2011, analysts at Wedbush raised their price target on shares of Clinical Data from $28.00 to $42.00.

23.    On February 14, 2011, Gene Marcial, writing for dailyfinance.com in an article titled *Inside Wall Street: Two Good Reasons for Clinical Data Shares to Soar Again,* wrote: "Investment firm Piper Jaffray analyst Edward Tenthoff figures Clinical Data is worth at least $47 -- **or as high as $75 in a buyout deal.** All of the seven major Wall Street analysts who follow Clinical data recommend the stock as a buy. [Emphasis Added]"

24.    In a January 24, 2011 article on seekingalpha.com titled *Analysts Bullish on Clinical Data After FDA Approval for Antidepressant Viibryd*, one analyst stated: "This drug enters a market where 50% of patients are dissatisfied with current treatment options, which accounted for $10 billion in sales. Viibryd has serious potential to generate significant revenue."

### The Unfair Proposed Transaction

25.    In a press release dated February 22, 2011, the Company announced that it had entered into a merger agreement with Forest pursuant to which Forest, through FL Holding CV and Merger Sub, will commence a tender offer to acquire all of the outstanding shares of the Company for $30.00 per share. In addition, Clinical Data shareholders will be entitled to a contingent consideration of up to $6.00 per share that may be paid upon achievement of certain commercial milestones related to Viibryd.  Pursuant to the terms of the Proposed Transaction, the contingent consideration will be paid if U.S. net sales of Viibryd over four consecutive fiscal quarters reach or exceed $800 million within the first 5 years ($1.00 per share), $1.1 billion within the first 6 years ($2.00 per share), and $1.5 billion within the first 7 years ($3.00 per share).

26.     The Proposed Transaction consideration is inadequate, and significantly undervalues the Company's prospects and earning potential.  Moreover, while Clinical Data shareholders are being cashed out at a low price, Forest shareholders will get the full benefit of the launch and marketing of Viibryd. Indeed, as stated in a press release announcing the Proposed Transaction: "Forest plans to launch Viibryd in the U.S. during the second half of 2011. Viibryd is expected to retain market exclusivity until March 2020 including full patent term extension of its composition of matter patent and anticipated pediatric exclusivity. Other patents may further extend this period."

27.     In addition to significantly undervaluing the Company, the proposed consideration of $30 per share represents a ***negative*** premium to the $33.90 price the Company's stock closed at on February 18, 2011, the last trading day prior to the announcement of the Proposed Transaction.

28.     The Proposed Transaction not only undervalues the Company but contains onerous and preclusive deal protection devices that operate to ensure that no competing offers will be made for the Company.  These onerous and preclusive devices include: (i) section 7.4(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by Forest; (ii) section 7.4(b) demands that the Company terminate any and all prior or on-going discussions with other potential acquirers; (iii) section §7.4(d) of the Merger Agreement requires, in the event an unsolicited bidder submits a competing proposal, that the Company notify Forest of the bidder's identity and the terms of the bidder's offer.  Thereafter, should the Board determine that the unsolicited offer is superior, before the Company can terminate the Merger Agreement with Forest in order to enter into the competing proposal, it

must grant Forest three business days in which the Company must allow Forest to amend the terms of the Merger Agreement to make a counter-offer that the Company must consider in determining whether it still must accept the competing proposal. In other words, the Merger Agreement gives Forest access to any rival bidder's information and allows Forest a free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor Forest and piggy-back upon the due diligence of the foreclosed second bidder.

29.     In addition, the Merger Agreement provides that Clinical Data must pay a termination fee of $45 million to Forest if Clinical Data decides to pursue the competing offer, thereby essentially requiring that the competing bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

30.     These preclusive deal protections illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a competing proposal. These provisions too narrowly limit the Board's ability to have an effective "fiduciary out," that is, the ability to respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal.

31.     At the same time that the Merger Agreement was executed, the executive officers and directors of Clinical Data entered into a Tender and Support Agreement, pursuant to which each executive officer, director and certain affiliated entities agreed to tender his, her or its shares, In-the-Money Warrants and Company Notes in the tender offer and, if necessary, vote his or her or its shares, In-the-Money Warrants and Company Notes in favor of the adoption of the Merger Agreement and the approval of the merger.

32.     This is significant because, as of February 22, 2011, the executive officers, directors and certain affiliated entities that entered into the Tender and Support Agreement beneficially owned over 50% of all shares of Clinical Data's common stock.  Randal J. Kirk, the Chairman of the Company's board of directors, and certain of his affiliates, alone owns roughly half of the Company's outstanding shares that are subject to the Tender and Support Agreement. As stated in the February 14, 2011, article on dailyfinance.com cited above, Kirk has his own self-interest in agreeing to the Proposed Transaction that does not align with the interests of the minority shareholders. As stated in the article:

> But Kirk is very much inclined to sell the company, of which he is the majority shareholder, with a nearly 50% stake. Why sell? For one thing, he has a lot of money already at stake in it and already has new projects going. One that he's passionate about is his new, still-privately owned company, Intrexon, which is developing a new medical technology platform that helps expedite development of targeted and less toxic anti-cancer drugs. Kirk has already invested $200 million in Intrexon.

> As part of building up the company, Kirk last month invested $20 million for a 5% stake in Ziopharm Oncology (ZIOP), which is developing anti-cancer drugs. Kirk plans to advance the launch of Intrexon's tech platform by applying it to Ziopharm's various oncology drugs. Kirk expects to invest $50 million more in Ziopharm.

> **A Veteran Dealmaker**

> "It's a way of further developing Intrexon's technology while, at the same time, getting involved with Ziopharm, which could become Kirk's new biotech project to build up and expand," says Griffin Securities' analyst Bedrij, who also rates Ziopharm a buy, now trading at $5.77 a share. She has 12-month target of $11 for Ziopharm. For sure, Kirk intends to increase his stake in Ziopharm, says Bedrij.

> Indeed, biotech maven and dealmaker Kirk, who has formed new companies that he later sold at huge profits, including New River Pharmaceuticals (bought by Shire Pharmaceuticals in 2007) and

> King Pharmaceuticals (acquired by Pfizer last year), is already
> busy steering Intrexon. He'll increasingly invest more time and
> money in his new company, of which he is president and chairman.
> So, in effect, Clinical Data is already on the auction block.

33.     In addition, Forest is the beneficiary of a "Top-Up" provision that ensures that Forest gains the shares necessary to effectuate a short-form merger. Pursuant to the Merger Agreement, if Forest receives 90% of the shares outstanding through its tender offer, it can effect a short-form merger.  If, however, Forest fails to acquire the 90% required, the Merger Agreement contains a "Top-Up" provision that grants Forest an option to purchase additional shares from the Company in order to reach the 90% threshold required to effectuate a short-form merger.

34.     In light of the Tender and Support Agreements and the Top-Up Option, consummation of the Proposed Transaction is virtually locked up, with the Company's minority shareholders having very little say on whether the Proposed Transaction is effectuated.

35.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## COUNT I
## BREACH OF FIDUCIARY DUTY
(Against the Individual Defendants)

36.     Plaintiff incorporates by reference the prior allegations set forth above.

37.     The Individual Defendants owe Plaintiff and other public shareholders a fiduciary duty of due care, honesty, candor, and loyalty.

38.     The Individual Defendants breached their fiduciary obligations to Plaintiff and other members of the Class by agreeing to accept consideration for Company stock that is

substantially less than its value.  The Individual Defendants have breached their obligations to maximize the value of Plaintiff's and other class members' shares.

39.     The Individual Defendants' breach of fiduciary duty has caused injury to Plaintiff and other Clinical Data shareholders.

40.     Plaintiff and other class members have suffered damages because they will receive inadequate consideration for their shares.

41.     Plaintiff has no adequate remedy at law.

**COUNT II**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
(Against Defendants Clinical Data, Forest and Merger Sub)

42.     Plaintiff incorporates by reference the prior allegations set forth above.

43.     Defendants Clinical Data, Forest and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties.

44.     As a result, Plaintiff and the Class members are being harmed.

45.     Plaintiff and the Class have no adequate remedy at law.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying Plaintiff as class representative;

B.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them, from proceeding with, consummating or closing the Proposed Transaction;

C.     In the event the Proposed Transaction is consummated, rescinding it and setting it aside or awarding rescissory damages to the Class;

D.      Directing Defendants to account to Class members for their damages sustained as a result of the wrongs complained of herein;

E.      Awarding Plaintiff the costs of this action, including a reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as the Court may deem just and proper.

Dated: March 25, 2011                                Respectfully submitted,


                                                     /s/ Adam M. Stewart_____
                                                     Thomas G. Shapiro (BBO#454680)
                                                     Adam M. Stewart (BBO#661090)
                                                     Shapiro Haber & Urmy LLP
                                                     53 State Street
                                                     Boston, MA 02109
                                                     Telephone:  (617) 439-3939
                                                     Facsimile:  (617) 439-0134
                                                     tshapiro@shulaw.com
                                                     astewart@shulaw.com

                                                     **SARRAF GENTILE LLP**
                                                     Ronen Sarraf
                                                     Joseph Gentile
                                                     One Penn Plaza, Suite 2424
                                                     New York, New York 10119
                                                     T: 212-868-3610
                                                     F: 212-918-7967

                                                     **VIANALE & VIANALE LLP**
                                                     Kenneth J. Vianale
                                                     2499 Glades Road, Suite 112
                                                     Boca Raton, Florida 33431
                                                     T: 561-392-4750
                                                     F: 561-392-4775

                                                     **Counsel for Plaintiff**